# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| DAVID J. OLDHAM, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>JO ANNE B. BARNHART, )<br>Commissioner of the Social Security )<br>Administration, )<br>)<br>Defendant. ) | Case No. CIV-05-369-M |

## REPORT AND RECOMMENDATION

Plaintiff, David J. Oldham, seeks judicial review of the final decision by the Defendant Commissioner denying Mr. Oldham's application for supplemental security income benefits (SSI benefits). This matter has been referred for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B) and (C). The Commissioner has answered and filed the administrative record ("AR"). Both parties have briefed their respective positions, and the matter is now at issue. For the reasons stated below, it is recommended that the Commissioner's decision be reversed and remanded for further proceedings.

### I.   Procedural History

Plaintiff filed an application for SSI benefits[1] alleging an inability to work since July 20, 1998, based on emotional problems, lower back pain, numbness in legs and feet, and

---

[1] The application was filed on May 1, 2001, with a protective filing date of April 16, 2001.

problems with his right wrist. AR 77.[2] Plaintiff's application was denied initially and on reconsideration. AR 43-44. Subsequently, a hearing was held before an Administrative Law Judge (ALJ). After consideration of the evidence, the ALJ found that Plaintiff was not disabled. AR 24-35. The Appeals Council denied Plaintiff's request for review. AR 4-6. Therefore, the decision of the ALJ is the final decision of the Commissioner.

## II.     The ALJ's Disability Determination

The ALJ followed the sequential evaluation process required by 20 C.F.R. § 416.920. She first determined that Plaintiff had not engaged in substantial gainful activity since the alleged onset date. AR 27, 34. At step two, the ALJ determined that Plaintiff suffers from severe impairments including a history of laminectomy at L4-L5, a remote history of right wrist fracture, compression fracture at T11 and T12, hypertension, shoulder injury, alcohol abuse, history of cannabis abuse and methamphetamine use, borderline intellectual functioning and major depression with anxiety. AR 27, 34.[3] At step three, the ALJ found no impairment or combination of impairments that meets or equals the criteria of any listed impairment described in the regulations. AR 27, 34. At step four, the ALJ determined Plaintiff's residual functional capacity (RFC):

---

[2]Plaintiff had previously applied for benefits in 1990 and 1992. AR 24. Plaintiff does not contend that the earlier applications should be reopened.

[3]The ALJ discussed Public Law 104-121 (March 29, 1996) at length. She noted that social security benefits cannot be paid to individuals for whom drug addiction and/or alcoholism is a contributing factor material to the determination of disability. AR 25. This law is codified at 42 U.S.C. § 423(d)(2)(C), with the implementing regulation at 20 C.F.R. § 416.935.

> [T]he claimant retains the . . . residual functional capacity to lift and/or carry twenty pounds occasionally and ten pounds frequently. He can stoop, kneel, crouch, and climb ramps or stairs occasionally. He cannot crawl or climb ladders, ropes or scaffolds. He cannot work with vibrating equipment. He cannot work around hazards or fast-moving machinery. He cannot work with the public. With the use of alcohol, he also is unable to work with supervisors or with co-workers, because of his inclination of violence and confrontation with drinking alcohol. With the use of alcohol, the claimant cannot work in the competitive work economy.

AR 32. Based on this RFC, the ALJ determined that Plaintiff cannot return to his past relevant work. AR 32, 35. Based on the testimony of a vocational expert, however, the ALJ determined that Plaintiff is capable of performing light unskilled jobs such as textile sewing machine operator and sedentary unskilled jobs such as surveillance systems monitor, machine tender, and assembler. AR 33, 35.

### III. Plaintiff's Claims Raised on Appeal

Plaintiff raises two issue in this appeal. First, Plaintiff contends that the ALJ erred by formulating Plaintiff's RFC without including all of the physical limitations found by his treating physician. Plaintiff further contends that the ALJ erred in her analysis of Plaintiff's mental limitations.

### IV. Standard of Review

Because the Appeals Council denied review, the ALJ's decision is the Commissioner's final decision for purposes of this appeal. *Doyal v. Barnhart*, 331 F.3d 758, 759 (10th Cir. 2003). Judicial review of the Commissioner's final decision is limited to determining whether the factual findings are supported by substantial evidence in the record

as a whole, and whether the correct legal standards were applied. *Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th Cir. 2005). "[S]ubstantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Doyal* at 760 (quotation omitted). A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it. *Branum v. Barnhart*, 385 F.3d 1268, 1270 (10th Cir. 2004). The court considers whether the ALJ followed the specific rules of law that must be followed in weighing particular types of evidence in disability cases, but does not reweigh the evidence or substitute its own judgment for that of the Commissioner. *Hackett*, 395 F.3d at 1172 (quotations and citations omitted).

**V.   Analysis**

### The ALJ's Formulation of Plaintiff's Physical RFC

In formulating Plaintiff's RFC, the ALJ relied in part on the Physical Residual Functional Capacity Assessment form completed by a medical consultant who examined Plaintiff one time. Using the familiar check list form, the medical consultant determined that Plaintiff can lift and/or carry twenty pounds occasionally and ten pounds frequently; that he can stand and/or walk about six hours in an eight-hour day; that he can sit for a total of six hours in an eight-hour day; that his capacity to push and/or pull is unlimited, other than as shown for lift and/or carry limits; that he can climb ramps, stairs, ladders, ropes and scaffolds frequently; that he can balance, kneel, crouch and crawl frequently; and that he can stoop occasionally. AR 138-140.

The Medical Source Statement submitted by Dr. Arnold Cooperman, Plaintiff's treating physician, however, is markedly different from the assessment of the medical consultant. Dr. Cooperman treated Plaintiff from October 23, 2001, through at least May 10, 2002. AR 226-229. On October 23, 2001, Dr. Cooperman noted that Plaintiff had pain in his left shoulder, fingers and hand, and burning pain across his low back and hips. Dr. Cooperman stated that Plaintiff was status post spinal surgeries. He prescribed Lortab and Flexerol and referred Plaintiff to a neurosurgeon. AR 229. During Plaintiff's second visit in 2002, Dr. Cooperman noted that Plaintiff had a lot of back pain and diagnosed him with chronic lumbar myofascial pain syndrome. AR 229. On May 10, 2002, Dr. Cooperman stated that Plaintiff was "unable to stand up straight – sitting hurts." Dr. Cooperman also noted that Plaintiff had brought MRI reports and that Plaintiff "needs form filled out for SSI." AR 226. Dr. Cooperman found that Plaintiff can do no frequent lifting or carrying; that he can lift ten pounds only occasionally; that he can stand and/or walk two hours in a typical eight-hour day, thirty minutes to one hour at a time; that he can sit one hour in an eight-hour day;[4] that Plaintiff's ability to push and or pull is limited to one hour; that Plaintiff can never climb, balance or crawl, but that he could handle, finger and feel frequently. Dr. Cooperman states that Plaintiff's poor balance precludes him from working with machinery

---

[4] It appears that Dr. Cooperman mistakenly switched the answers for questions 5 and 6 on the form. Question five asks how long the person in question could sit in a typical eight-hour workday. Dr. Cooperman answered, "30 min." Question 6 asks how long the patient can sit continuously. Dr. Cooperman answered, "1 hour." AR 227. This inconsistency was not addressed by the ALJ as a reason for affording Dr. Cooperman's opinion "little credence." AR 32.

and working at heights. Dr. Cooperman states that he based his findings on x-rays and MRI reports. AR 227-228.

Under the "treating physician rule," greater weight is generally given to the opinions of sources of information who have treated the claimant than of those who have not. *See Hackett*, 395 F.3d at 1173-1174 (*citing Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004)). Using a sequential analysis, the ALJ must first determine whether the opinion of a treating source should be given controlling weight. *Id.* at 1174. An ALJ is required to give the opinion of a treating physician controlling weight if it is both: (1) "well-supported by medically acceptable clinical and laboratory diagnostic techniques;" and (2) "consistent with other substantial evidence in the record." *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003) (quotation and citation omitted). If an opinion fails to satisfy either of these conditions, it "means only that the opinion is not entitled to 'controlling weight,' not that the opinion should be rejected." *Id.* (quoting SSR 96-2p, 1996 WL 374188, at *4). Treating physician opinions not given controlling weight "'are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527 and 416.927.'" *Id.* Those factors are: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is

rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion. *Id.* at 1301 (quotation omitted). If the ALJ chooses to reject the treating physician's opinion entirely, the ALJ must set forth specific legitimate reasons for doing so. *See Langley v. Barnhart*, 373 F.3d at 1119. As explained in policy interpretations regarding treating source evidence:

> Because treating source evidence (including opinion evidence) is important, if the evidence does not support a treating source's opinion on any issue reserved to the Commissioner and the adjudicator cannot ascertain the basis of the opinion from the case record, the adjudicator must make "every reasonable effort" to recontact the source for clarification of the reasons for the opinion.

Soc. Sec. Rul. 96-5p, 1996 WL 374183 at *6-7.[5]

In this case, the ALJ states that "[o]pinions of treating physicians concerning the nature and severity of the impairments are given controlling weight when amply supported by and not contrary to other credible evidence." AR 31. She also states that she "considered the nature and length of the treating relationship, areas of specialty, findings supporting the opinions, and similar factors." AR 31. In her explanation of the weight she afforded Dr. Cooperman's opinion, however, the ALJ stated only this:

> [T]here had been minimal findings on each of the three examinations [of Plaintiff by Dr. Cooperman]. The [Dr.'s] notes were primarily limited to the claimant's subjective complaints (except for blood pressure level readings). The statement was solicited in support of the claimant's application for benefits, in contemplation of the hearing, and appeared merely to state the

---

[5]The ALJ made no effort to recontact Dr. Cooperman, even though she stated that "[t]here is no evidence what the doctor considered or what was communicated to him by the claimant and/or the claimant's attorney[.]" AR 32.

>claimant's allegations. There is no evidence what the doctor considered or what was communicated to him by the claimant and/or the claimant's attorney in making the statement. The statement, therefore, is given little credence.

AR 31-32.[6] The ALJ did not give controlling weight to Dr. Cooperman's opinion apparently based on her view that his "notes were primarily limited to the claimant's subjective complaints." AR 31. The ALJ ignored Dr. Cooperman's notation that he based his opinion on x-rays and MRI reports. *See* AR 228, 226. Further, the ALJ did not point to any evidence in the record contrary to Dr. Cooperman's opinion other than the Physical Residual Functional Capacity Assessment form completed by the medical consultant. Ample evidence in the medical record indicates that Plaintiff has undergone back surgery and has suffered degenerative disc disease and compression fracture. AR 217-225. Additionally, even the medical consultant found restricted range of motion in Plaintiff's lumbosacral spine. AR 114, 116.

Even if the ALJ correctly decided not to give controlling weight to the opinion of Dr. Cooperman, his opinion is still entitled to deference and must be weighed using the required factors. The ALJ must "give good reasons . . . for the weight assigned to a treating physician's opinion." *See Langley v. Barnhart*, 373 F.3d at 1119. Here, reversal is warranted because the ALJ did not give good reasons. The ALJ states that Plaintiff was seen

---

[6]In her Brief, the Commissioner attempts to justify the ALJ's decision by analyzing the factors the ALJ should have considered. *See* Brief in Support of the Commissioner's Decision at 6-8. This Court may not, however, "create post-hoc rationalizations to explain the Commissioner's treatment of evidence when that treatment is not apparent from the Commissioner's decision itself." *Grogan v. Barnhart*, 399 F.3d 1257, 1263 (10th Cir. 2005).

three times by Dr. Cooperman.  This statement alone, however, cannot be considered adequate analysis of the factors that an ALJ should consider when determining the weight to afford a treating physician's opinion.  Rather, the ALJ's statement indicates that she gave "little credence" to Dr. Cooperman's opinion because she questioned Plaintiff's motive for requesting the Medical Source Statement and Dr. Cooperman's motive for giving it.  It is improper, however, for an ALJ to reject a medical opinion based on the ALJ's "speculative and unsupported conclusion" that the medical opinion was made as a "courtesy to a patient."  *Id*.

The ALJ's rejection of Dr. Cooperman's opinion may also have been influenced by her conclusion that Plaintiff exaggerates his symptoms to obtain pain medication:

> The claimant appears to be seeking narcotic pain medications and anti-anxiety medications.  When he sought emergency treatment in October 2001, he was out of Lortab and Valium and attempted to get these.  Even during the consultive examination, the claimant requested prescriptions for his pain medications.  Often, individuals desiring such medications will exaggerate symptoms to doctors to make it more likely to receive the desired medications.

AR 31.  None of the medical providers or consultants suggest, however, that Plaintiff was exaggerating symptoms to procure drugs.  The ALJ's conclusion is not supported by substantial evidence.

Because the ALJ did not properly follow the rules required for weighing the treating physician's opinion, the ALJ committed legal error requiring reversal.  Based on this error, the case should be reversed and remanded to the Commissioner for further proceedings consistent with this Report and Recommendation.

**The ALJ's Analysis of Mental Limitations**

Plaintiff contends that the ALJ erred in her analysis of Plaintiff's mental limitations. Specifically, Plaintiff challenges the ALJ's analysis of his use of alcohol. Plaintiff also challenges the ALJ's failure to include limitations in the RFC based on Plaintiff's borderline level of intellectual functioning and major depression with anxiety – conditions the ALJ found to be "severe" at step two of the sequential analysis. The ALJ's findings pertinent to Plaintiff's mental limitations are as follows:

> He cannot work with the public. With the use of alcohol, he also is unable to work with supervisors or with co-workers, because of his inclination of violence and confrontation when drinking alcohol. With the use of alcohol, the claimant cannot work in the competitive work economy.

AR 32.

Plaintiff contends that the ALJ's analysis of Plaintiff's alcohol use "is simply incorrect." Plaintiff's Brief at 14. Plaintiff notes that only the consultive examiner, Dr. Annette Miles, who saw Plaintiff on only one occasion, diagnosed him as suffering from alcohol abuse. The record does contain some other evidence regarding Plaintiff's history of alcohol abuse. Records from the Orangeburg Area Mental Health Center where Plaintiff was treated several times early in 2000 reference possible alcohol abuse. The Initial Psychiatric Evaluation dated February 8, 2000, stated that Plaintiff had been drinking when he hurt his back in July 1999. The report also states:

> <u>S.A. hx</u>– h/o alcohol abuse in the past which has caused major problems for pt. in past - marital discord, job problems & recent (i.e. 7/99) back injury; currently, Mr. Oldham drinks "a couple of beers whenever I can afford it." He

> does not attend AA or work 12-step program at this time but does consider ETOH to be a problem in his life.

AR 211. The treatment plan was to rule out alcohol abuse. AR 212. On discharge, Plaintiff was diagnosed with depressive disorder and was prescribed an anti-depressant medication. AR 187.

The consultive examiner, Annette Miles, Ph.D., is a clinical psychologist who performed a mental status examination on July 25, 2001. Her report on the history of Plaintiff's substance abuse states:

> Mr. Oldham began drinking when he was 18 years old. He began drinking on the weekends. When he was about 24 years old he began drinking on a daily basis. When he was about 40 years old, he reduced his drinking to weekends only. He denied having alcohol blackouts and withdrawal symptoms. He went to Gateway for treatment about 5 years ago. His hospitalization at Griffin may have been for substance abuse. He was unsure. He has received two DUIs. He drinks alcohol now if he is "really in pain" or somebody offers it to him or buys it for him. The last time he drank alcohol was 4 days before this examination and he had 8 beers.

AR 121. She assessed Plaintiff's global functioning with a GAF score of 60, indicating "moderate" difficulties in social or occupational functioning.[7]

On a Psychiatric Review Technique form completed by Dr. R. Smallwood, Ph.D., dated August 8, 2001, Plaintiff was assessed with a history of substance abuse. AR 124,

---

[7]A GAF score is a subjective determination of "the clinician's judgment of the individual's overall level of functioning." *American Psychiatric Association Diagnostic and Statistical Manual of Mental Disorders* (4th ed. 2000) at 32. A score of 51-60 (on a scale of 100) indicates "moderate symptoms" such as a flat affect, or moderate difficulties in social or occupational functioning. *Id.* at 34.

132, 134. But Dr. Smallwood rated the functional limitations caused by Plaintiff's substance abuse as "mild" or "none." AR 134.

On this record, the ALJ found that Plaintiff's "drug addiction and/or alcoholism are contributing factors material to the determination of disability." AR 33. Dr. Smallwood's assessment indicates that Plaintiff's history of substance abuse caused, at worst, only mild functional limitations. Dr. Miles' assessment suggests moderate functional difficulties. The treating physician at the Orangeburg Mental Health Center apparently ruled out alcohol abuse as the cause of his depression. The record does not contain substantial evidence in support of the ALJ's finding that alcoholism was a "contributing factor" material to the determination of disability.[8] Moreover, the ALJ did not follow the sequential analysis

---

[8]At best there is a "scintilla" of evidence in Plaintiff's treatment records from the Orangeburg Mental Health Center, indicating that Plaintiff's use of alcohol in the past had caused "job problems." AR 211. The nature of those problems is not elucidated. This evidence is not adequate to support the ALJ's conclusion that with alcohol use, Plaintiff is "unable to work with supervisors or with co-workers, because of his inclination of violence and confrontation when drinking alcohol." AR 32.

required by the pertinent regulation. *See* 20 C.F.R. § 416.935.[9] Nor did the ALJ address the effects of alcohol use on each impairment. *See Drapeau v. Massanari*, 255 F.3d 1211, 1215 (10th Cir. 2001) (reversal and remand necessary when ALJ considered only the effect of the claimant's alcoholism on her depression and not on her other severe impairments). In sum, the ALJ did not apply the proper legal standards in evaluating evidence of alcoholism under 42 U.S.C. § 423(d)(2)(C) and 20 C.F.R. § 416.935, and the ALJ's finding is not supported by substantial evidence.

---

[9]The law provides that "an individual shall not be considered to be disabled for purposes of this subchapter if alcoholism or drug addiction would (but for this subparagraph) be a contributing factor material to the Commissioner's determination that the individual is disabled." 42 U.S.C. § 423(d)(2)(C). The implementing regulation for 42 U.S.C. § 423(d)(2)(C) requires the ALJ to determine whether the claimant is disabled *prior* to finding that alcoholism was a contributing factor material to the determination. The regulation provides in pertinent part:

>  (a) General. If we find that you are disabled and have medical evidence of your drug addiction or alcoholism, we must determine whether your drug addiction or alcoholism is a contributing factor material to the determination of disability, unless we find that you are eligible for benefits because of your age or blindness.
>  (b) Process we will follow when we have medical evidence of your drug addiction or alcoholism.
>  (1) The key factor we will examine in determining whether drug addiction or alcoholism is a contributing factor material to the determination of disability is whether we would still find you disabled if you stopped using drugs or alcohol.
>  (2) In making this determination, we will evaluate which of your current physical and mental limitations, upon which we based our current disability determination, would remain if you stopped using drugs or alcohol and then determine whether any or all of your remaining limitations would be disabling.
>  (i) If we determine that your remaining limitations would not be disabling, we will find that your drug addiction or alcoholism is a contributing factor material to the determination of disability.
>  (ii) If we determine that your remaining limitations are disabling, you are disabled independent of your drug addiction or alcoholism and we will find that your drug addiction or alcoholism is not a contributing factor material to the determination of disability.

20 C.F.R. § 416.935.

Plaintiff also takes issue with the ALJ's mental RFC findings because they do not include any limitations relating to his borderline intellectual functioning. Dr. Miles estimated Plaintiff's I.Q. as 71-79. AR 122.  Although Plaintiff does not contend that any of the jobs identified by the ALJ require more than borderline intellectual functioning, the ALJ did not include borderline intellectual functioning in any of her hypothetical questions to the vocational expert.  Therefore, it is impossible to know whether borderline intellectual functioning would affect the type or number of jobs identified by the VE.  On remand, the ALJ should determine whether Plaintiff's borderline intellectual functioning causes limitations in his ability to work and include such limitations in any hypothetical questions posed to a VE.

Finally, Plaintiff challenges the ALJ's mental RFC findings because they do not include limitations relating to depression with anxiety, another impairment the ALJ identified as severe in step two.  As noted, however, the ALJ did find that Plaintiff "cannot work with the public," and it is conceivable that this limitation relates in part to depression, although the ALJ did not specifically make that connection.  Records from a treating physician at the Orangeburg Area Mental Health Center indicate that Plaintiff was experiencing both depression and anxiety and that his mental state was closely linked to his physical pain.  Dr. E. O. Resnick diagnosed Plaintiff with Major Depressive Disorder with anxiety, likely due to back injury.  Dr. Resnick stated:

> Before many of the emotional issues in Mr. Oldham's life can be addressed, it appears he would benefit from medical treatment to relieve his back pain.

> He is encouraged to . . . contact doctor at Family Health Center to see if he can get samples of pain med, or call Salvation Army for assistance.

AR 212. The discharge note states that Plaintiff suffers from back pain which makes him depressed and anxious. AR 180. No functional limitations are included in his assessment. On remand, the ALJ should give due consideration to the evidence of Plaintiff's depression, identify any functional limitations that may be caused by this impairment, and include any such limitations in any hypothetical questions posed to a vocational expert.

## RECOMMENDATION

It is recommended that the Commissioner's decision be reversed and remanded for further proceedings consistent with this Report and Recommendation.

## NOTICE OF RIGHT TO OBJECT

The parties are advised of their right to object to this Report and Recommendation. *See* 28 U.S.C. § 636. Any such objections must be filed with the Clerk of the District Court by February 15th, 2006. *See* LCvR72.1. The parties are further advised that failure to make timely objection to this Report and Recommendation waives the right to appellate review of the factual and legal issues addressed herein. *Moore v. United States*, 950 F.2d 656 (10th Cir. 1991).

## STATUS OF REFERRAL

This Report and Recommendation terminates the referral by the District Judge in this matter.

ENTERED this  26th  day of January, 2006.

/s/ Valerie K. Couch
VALERIE K. COUCH
UNITED STATES MAGISTRATE JUDGE